**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

MARIO SIMUEL              :
     Petitioner        :
                            :     Criminal No. L-03-483
     v.                  :     Civil No. L-07-1024
                            :
UNITED STATES OF AMERICA    :
     Respondent       :
                            :
                            :

**<u>MEMORANDUM</u>**

Now pending is <u>pro se</u> Petitioner Mario Simuel's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The papers adequately present the issues and no genuine factual disputes exist, so no evidentiary hearing is necessary.[1] For the reasons stated below, the Court will, by separate order, DENY the motion and DIRECT the Clerk to CLOSE the case.

**I.       Background**

On July 1, 2004, a federal grand jury returned a nine count Superseding Indictment against Simuel and eight co-defendants charging them with conspiracy to commit armed bank robbery, armed bank robbery, and bank robbery arising from a series of seven armed bank robberies in 2003. On September 9, 2004, four days prior to trial, Simuel pled guilty, pursuant to a plea agreement, to Count Seven of the Superseding Indictment.[2] The plea agreement stated "that the Defendant or others operating at his direction [robbed a bank] by force and violence or

---

[1] See <u>United States v. Yearwood</u>, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required…on a § 2255 motion if the record conclusively shows that petitioner is entitled to no relief").
[2] Count Seven charged Simuel with robbing the Mercantile Bank in Towson, Maryland on September 10, 2003. Simuel was the last defendant to plead guilty.

1

by acting in an intimidating manner, and by use of a dangerous weapon." Resp. Br., Ex. F, at 2.

The relevant portion of the statement of facts from the plea agreement recounts that Simuel and

eight named co-defendants:

> did knowingly and intentionally combine, conspire, confederate and agree
> together with each other and others to commit armed bank robbery and bank
> robbery. [Simuel] went into at least one bank, and planned all of the bank
> robberies, with knowledge that items appearing to be guns were used to rob the
> bank. Further, he recruited others to rob banks. [Simuel] received proceeds from
> each of the robberies in which he is charged. A dangerous weapon, to wit: a toy
> gun, was brandished at three of these robberies, including the bank robbery
> charged in Court Seven. At all of the banks, a threat of death was made.
> Gov't Opp'n, Ex F, at 4.

The Court, after conducting a lengthy Rule 11 plea colloquy, accepted Simuel's guilty

plea to Count Seven and scheduled his sentencing hearing.

A mere three days later, on September 12, 2004, co-defendant Duane Chase wrote a letter

to Simuel. Chase told Simuel that he would write a letter to the Court stating that Simuel did not

participate in any of the bank robberies. In a letter dated September 15, 2004 and addressed to

the Court, Chase wrote that Simuel did not rob any banks with him. Subsequently, co-

defendants Joseph McKenny and Kenneth Eads each mailed similar letters to the Court.[3]

Based on these letters, Simuel moved to withdraw his guilty plea arguing that he only

pled guilty because he expected his co-conspirators to testify against him. After the issue was

fully briefed, the Court held an evidentiary hearing to ascertain whether Simuel demonstrated a

"fair and just" reason to withdraw his plea. See Fed. R. Crim. P. 11(d). At the hearing, the

Court heard testimony from Simuel, U.S. Probation Officer Lawrence Gagan, and Baltimore

---

[3] Simuel later produced a letter allegedly written by Kevin McNeil, which similarly asserted
Simuel's innocence.

County Police Detective Brian Edwards.[4]  At the hearing, Simuel asserted for the first time that

he was innocent and did not commit or plan any of the seven armed bank robberies.

In a written memorandum, the Court held that "no such possibility exists" that Simuel

was "an innocent man who pled guilty to a crime he did not commit."  Mem. 6, June 2, 2005.

The Court continued, "The most damaging evidence is [Cierra] Dillard's [(the owner and driver

of the get-away car)] statement that Simuel participated in the bank robberies.  Her statement is

corroborated by an eyewitness' description that her car was used in the getaway.  Her statement

is also consistent with that of her co-defendants.  Accordingly, the Court is satisfied that Simuel

is not an innocent man who pled guilty to receive a two-level downward adjustment [at

sentencing] for acceptance of responsibility."  Id.  Simuel was sentenced to 235 months

imprisonment.

Simuel appealed the Court's decision to not allow him to withdraw his plea, and the

Court of Appeals for the Fourth Circuit affirmed by unpublished per curiam opinion.  United

States v. Simuel, 180 Fed. App'x 431 (4th Cir. 2006).

Simuel now petitions the Court to vacate, set aside, or correct his sentence pursuant to 28

U.S.C. § 2255.  His claims can be distilled into five categories.[5]  Though none are meritorious,

some are legally salient and must be substantively addressed.  Many of Simuel's claims,

however, are facially baseless, and must be dispatched summarily.

---

[4] The Court summarized the information it received during that hearing in its June 2, 2005
Memorandum.

[5] Simuel claims 1) ineffective assistance of counsel, 2) involuntary guilty plea, 3) invalid waiver
of appellate rights, 4) prosecutorial misconduct, 5) actual innocence, 6) insufficient evidence/no
interstate commercial nexus, 7) impermissible fact-finding by the Court at sentencing, 8)
improper application of the 18 U.S.C. § 3553(a) factors at sentencing, and 9) miscellaneous
errors at sentencing.

II.     **Analysis**

A.      **Ineffective Assistance of Counsel**

Simuel's threshold argument is that he would not have pled guilty had his attorney been competent.  To state a claim for constitutionally ineffective counsel, Simuel bears the burden of showing both that (1) counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," and (2) that he was prejudiced by his counsel's performance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In a case such as this where the defendant pled guilty, the "defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52 (1985).  Simuel must satisfy both prongs of the Strickland test, and the Court may address either prong, or both.  Strickland, 466 U.S. at 697.

Simuel points to four aspects of his counsel's performance that he deems were constitutionally inadequate, which the Court will address in turn.  The allegations are factually unfounded and/or provide Simuel with no basis for relief under Strickland.[6]

1.      **Failure to Investigate Purportedly Exculpatory Information**

Simuel claims he had an alibi or alibis for unspecified times and dates that, had they been investigated, exonerated him from the crimes charged in the Superseding Indictment.[7]  The continuing and conspiratorial nature of his crimes makes vague alibis useless.  Simuel was indicted for conspiracy to commit bank robbery and pled guilty to "plan[ing] all of the bank robberies" and "recruit[ing] others to rob banks."  Accordingly, his counsel was not ineffective

---

[6] During Simuel's Rule 11 colloquy prior to his guilty plea, the Court referred to Simuel's attorney as "a very learned, competent and able attorney."  Hrg. Tr. Sept. 9, 2004, 10:24-25.

[7] Simuel claims a "sign-in ledger" at the Salvation Army Job Placement Center on Redwood Street and also unnamed witnesses "at the halfway house" and his family would have been alibi witnesses.  Pet. at 3-4.

for allegedly failing to investigate any vague alibis nor was Simuel prejudiced by any such alleged failure.

**2.      Failure of Counsel to Contest the Validity of the Search and Arrest Warrants**

Without any support, Simuel claims the search and arrest warrants were invalid, and his counsel should have contested them.  The search warrants were accompanied by sworn affidavits supporting probable cause for the search and arrest and approved by a United States Magistrate Judge.  The warrants have no outward indicia of invalidity or illegality, so counsel cannot be faulted for any failure to investigate their purported invalidity.

Moreover, the evidence seized in the search was not essential to the government's case against Simuel since the evidence against him was primarily based on co-conspirator statements. Accordingly, Simuel cannot show ineffectiveness or prejudice.

**3.      Failure by Counsel to Disclose to Simuel Allegedly Exculpatory Evidence**

Simuel claims that a wide variety of purportedly exculpatory evidence was not investigated by his counsel nor disclosed to Simuel.  When counsel is alleged to have withheld relevant evidence from the defendant, the test for prejudice under Strickland and Hill is "whether knowledge of additional information would have led [the defendant] to decline the plea agreement or would have led his attorneys to recommend that he do so."  Hooper v. Garraghty, 845 F.2d 471, 473 (4th Cir. 1988).

Upon review, the Court finds that none of the information is conceivably exculpatory, so this claim must fail.  The purportedly exculpatory evidence addresses (i) how others (both members of the conspiracy and unindicted persons) also committed bank robberies, or (ii) that incriminating evidence was found in the possession of a different member of the conspiracy. Petr.'s Br. 6, 8.  In a conspiracy, all members are equally liable for each other's acts.  Evidence

that merely highlights the culpability of others in no way lessens Simuel's own culpability as a member of the conspiracy or as an organizer of the bank robberies.  Accordingly, none of the evidence raised by Simuel supports his claim that, had he been told it, he would have refused a guilty plea and demanded to proceed to trial.

**4.      Failure of Counsel to Make Certain Motions and/or Objections**

Simuel claims that his counsel failed to make a number of pre-trial motions.  His counsel did make a number of motions, including a motion to suppress Simuel's confession, which was denied.  Simuel does not specify any motion that would have had a dispositive effect on his decision to plead guilty, so no relief can be granted.[8]

Simuel also claims his counsel should have objected to the introduction of certain pieces of evidence during the hearing on his motion to withdraw his guilty plea.  Here, Simuel claims his attorney was ineffective because he failed to object to certain testimony from Probation Officer Lawrence Gagan regarding statements Simuel made to Gagan during Gagan's investigation of the presentence report.  Petr.'s Br. 7.

Proper objections are typically based on the federal rules of evidence.  See, e.g., Federal Rule of Evidence 103.  An objection is improper if the witness is merely stating a fact that a party disagrees with.  In that instance, the attorney must cross examine the witness.  The Court's review of the transcript suggests no cause for objection to Mr. Gagan's testimony.  Rather, as was appropriate under the circumstances, Simuel's attorney vigorously cross examined Mr. Gagan to prove his case.

---

[8] Simuel makes additional claims that his counsel made other errors and failed to file certain motions, but they are frivolous.  For example, Simuel claims that his counsel failed to make a Fed. R. Crim. P. 29 motion for judgment of acquittal.  Since Simuel pled guilty before trial, his counsel could not have made such a motion.

In sum, the Court finds no grounds for Simuel's claim that his counsel was constitutionally ineffective.

**B.      Involuntary, Uninformed Guilty Plea**

Simuel claims his guilty plea was involuntary and that he lacked "the mental competence to understand and appreciate the nature and consequences of his plea."  Petr.'s Br. 10.  Simuel has the burden to prove that "his mental facilities were so impaired . . . when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea."  United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974).  In light of this standard, Simuel's plea was informed and voluntary.

First, the Court notes that Simuel, in his motion to withdraw his guilty plea, did not claim it was either involuntary or uninformed.  Also, this case was not Simuel's first brush with the criminal justice system.  In fact, Simuel was convicted by a jury in 1998 for bank robbery, the identical crime he pled guilty to in 2004.

Second, prior to Simuel entering his plea, the Court conducted an unusually detailed Rule 11 colloquy with Simuel that runs to 23 transcribed pages.  To assess Simuel's level of sophistication, the Court asked Simuel "what is the highest level that you've achieved in your schooling?"  Hrg. Tr. 4, Sept. 9, 2004.  Simuel responded:

> Seventh grade schooling, but in my last incarceration, Judge, I couldn't even sign my name.  The last word you told me [was] don't let time be wasted.  During incarceration, I was taught how to read.  And I do geometry, which I have a certificate that I can show you during my sentencing, geometry, algebra, Pythagorean's theory.  I learned all these things . . . .  [Incarceration] was pretty much sacrifice years, 18 months of not watching TV or nothing.  Id.

The Court followed up its question by confirming that Simuel was "now capable of reading and writing in the English language," to which Simuel agreed.  Id.

The Court continued to explain, in great detail, how a trial would be conducted and how the Court would find facts at sentencing.  Further, the Court even summarized the facts of the charge that Simuel was admitting, which Simuel acknowledge as accurate.  Id. at 17-18. Accordingly, the Court concludes that Simuel fully understood the ramifications of his guilty plea.[9]

Simuel also claims that his waiver of his appellate rights was invalid because his guilty plea was invalid.  This argument too must be rejected because his plea was voluntary and informed, and he was sentenced within the parameters set forth in the plea agreement.  See United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994).

## C.     Actual Innocence

In no particular order in his petition, coming as his fifth issue (out of a total of nine), Simuel claims he is innocent.  During the pendency of this case and through his guilty plea, Simuel never claimed he was innocent.  He first argued that he was innocent after his co-conspirators wrote letters to this Court proclaiming Simuel's innocence.  The Court held an evidentiary hearing on the issue.  After the hearing, the Court issued a memorandum that concluded "no such possibility exists" that Simuel "is an innocent man who pled guilty to a crime he did not commit."  Mem. 6, June 2, 2005.

Simuel raises no arguments to persuade the Court otherwise.  In his petition, Simuel raises what the Court could only charitably describe as immaterial factual discrepancies in witness testimony from the hearing.  None of the purported discrepancies undercut Simuel's culpability as a planner and perpetrator of bank robberies, let alone his actual innocence.

---

[9] Prior to pleading guilty, Simuel's attorney informed the Court that Simuel "has in fact been tried, in fact before Your Honor, so he is well aware of how the judicial system works in terms of a fair trial, and all that goes to help him understand what he's doing here today."  Hrg. Tr. 19, Sept. 9, 2004.

D.    **Prosecutorial Misconduct**

Simuel's claim of prosecutorial misconduct should have been brought on direct appeal, but was not.  His failure bars this Court from considering his claims on collateral attack.  <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).  Nevertheless, the claim is frivolous.

He claims that Detective Edwards lied under oath when he testified at the hearing.  The Court heard the detective's testimony and found him to be in command of the facts and credible. In contrast, Simuel testified at the hearing and the Court found his testimony to be untrustworthy. Moreover, Simuel provides no evidentiary support to contradict Edwards' claims or to support his own allegations of misconduct.

Simuel raises other examples of misconduct (e.g., the Government withheld purportedly exculpatory evidence or that the search warrant was tampered with).  Many of Simuel's claims are factually untrue (i.e., the information was contained in the indictment so it was not withheld) or nonsensical.  The remaining examples are devoid of evidentiary support.  The Court finds nothing to support his claim.

E.    **Sentencing**

Simuel first argues that the Court erred in sentencing him by improperly considering factors not proven beyond a reasonable doubt to a jury.  Simuel was sentenced based entirely on the facts he admitted to as part of his guilty plea.  Hrg. Tr. 5-6, 14, June 2, 2005.  This is entirely proper.  <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>United States v. Evans</u>, 416 F.3d 298, 300 (4th Cir. 2005).

Simuel also seeks resentencing in accordance with <u>United States v. Booker</u>, 543 U.S. 220 (2005).  <u>Booker</u>, in which the Supreme Court held that the guidelines advisory only, was decided on January 12, 2005.  Simuel was sentenced on June 2, 2005.  At sentencing, the Court

recognized expressly that the guidelines were advisory in nature.  <u>See</u> Hrg. Tr. 12, June 12, 2005.

Ergo, Simuel was sentenced in the post-<u>Booker</u> era, meaning that any arguments raised by

Simuel seeking resentencing in accordance with <u>Booker</u> are baseless.

**F.      Miscellaneous Claims**

Simuel raises additional claims.  The Court denies relief on those claims as they are

facially baseless.  <u>See</u> Resp. Br. 32 (subheadings F, G, and H).

**IV.      Conclusion**

For the foregoing reasons, the Court will, by separate Order, DENY Simuel's 28 U.S.C.

§ 2255 motion and DIRECT the Clerk to CLOSE the case.

Mr. Simuel, should you choose to appeal the judgment of this Court to the United States

Court of Appeals for the Fourth Circuit, you are ADVISED that you must file a notice of appeal

with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or

state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure

22(b)(1).  If this Court should deny certification, you may request a circuit judge of the United

States Court of Appeals for the Fourth Circuit to issue the certificate.


Dated this 31 day of March, 2009.


_____/s/_____
Benson Everett Legg
Chief Judge